VICTORINOX AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc., Plaintiffs,

v.

THE B & F SYSTEM, INC., John D. Meyer, ABC Corporations 1–10, and John Does 1–10, Defendants.

The B & F System, Inc., Counterclaim Plaintiff,

v.

Victorinox AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc., Counterclaim Defendants.

13 Civ. 4534 (JSR)

United States District Court, S.D. New York.

Signed July 29, 2016

Danielle Ella Gorman, Rory J. Radding, Locke Lord LLP, David III Weild, Harral Straat Tenney, Edwards Wildman Palmer LLP, New York, NY, Jenny Theresa Slocum, Dickinson Wright PLLP, Washington, DC, for Plaintiffs and Counterclaim Defendants.

David Max Dahan, Frank Joseph Colucci, Colucci & Umans, Douglas J. Steinke, Ford Marrin Esposito Witmeyer & Gleser, LLP, Michael J. Tricarico, Carroll, McNulty & Kull, LLC, Joseph H. Lessem, New York, NY, Natalma M. McKnew, Smith Moore Leatherwood LLP, Greenville, SC, Christopher R. Carroll, Carroll, McNulty & Kull L.L.C, Basking Ridge, NJ, for Defendants and Counterclaim Plaintiff.

## MEMORANDUM ORDER

JED S. RAKOFF, United States District Judge.

This will respond to the request of the Court of Appeals that the District Court decide a disqualification motion raised for the first time on appeal. By way of background, defendants were sellers of counterfeit Swiss Army knives and, while on appeal following entry of judgment against them, moved to disqualify plaintiffs' counsel, Locke Lord LLP, on the ground that Locke Lord failed to disclose its representation of defendants on other matters while it represented plaintiffs in this case. For the following reasons, the Court denies defendants' motion.

The facts of this case are set forth in the Court's Memorandum dated June 22, 2015, familiarity with which is here presumed. See Memorandum dated June 22, 2015, ECF No. 58. In brief summary, plaintiffs Victorinox AG, Victorinox Swiss Army, Inc., and Wenger NA, Inc. (collectively, "Victorinox"), makers of the iconic Swiss Army Knife, brought suit against defendants The B&F System, Inc. ("B&F") and John D. Meyer, asserting various state and federal trademark claims. The Court granted plaintiffs' summary judgment motion, finding that defendants had willfully infringed plaintiffs' trademark. See id. at 5, 8. On January 29, 2016, the Court entered an Amended Final Judgment and Permanent Injunction, awarding plaintiffs damages, attorneys' fees, costs, and injunctive relief. See Memorandum Order; Amended Final Judgment and Permanent Injunction dated Jan. 29, 2016, ECF No. 110.

Defendants appealed to the Court of Appeals for the Second Circuit. Before the Second Circuit, defendants moved to disqualify Locke Lord on the ground that Locke Lord's Dallas office had simultaneously represented defendant B&F in trademark matters while Locke Lord's New York office represented Victorinox in the present litigation. The Second Circuit remanded for this Court to decide by August 1, 2016, the disqualification motion in the first instance. See Order of the United States Court of Appeals for the Second Circuit, ECF No. 127.

On June 20, 2016, defendants filed, in this Court, a disqualification motion essentially identical to their motion in the Second Circuit. On July 7, 2016, the Court held an evidentiary hearing on defendants' motion. On the basis of the briefing, the evidence adduced at the evidentiary hearing, and the Court's assessment of the witnesses' demeanor, the Court makes the following findings of fact and conclusions of law.

Most of the material facts are not meaningfully in dispute. The initial complaint in this case was filed on June 28, 2013. See Complaint, ECF No. 1. Plaintiffs' initial counsel was Edwards Wildman LLP. Edwards Wildman LLP and Locke Lord LLP announced their intent to merge in September 2014 and merged on January 12, 2015. Declaration of Michael J. Tricarico dated February 12, 2016, in Support of Defendants' Motion to Disqualify Plaintiffs' Counsel Previously Filed with the U.S. Court of Appeals for the Second Circuit on February 16, 2016, ¶ 7, ECF No. 133. Accordingly, beginning January 12, 2015, and continuing through the present, Locke Lord LLP has represented plaintiffs in this case.

Meanwhile, as early as 1995 but no later than 1997, defendant B&F had retained Roy W. Hardin, Esq., who joined Locke, Liddell & Sapp in 1997, for help on various trademark matters. Tr. 3:17-22. Hardin represented B&F until December 18, 2015, when he terminated his representation of B&F by letter, as discussed below.[1] Locke,

---

[1]. According to Hardin, "Locke Lord LLP did not perform any substantive services for B&F after 2011 except to send out courtesy reminders of due dates for renewals or necessary affidavits on previously registered

Liddell & Sapp merged with Lord Bissell & Brook in 2007, forming Locke Lord LLP. Declaration of Michael J. Tricarico dated February 12, 2016, in Support of Defendants' Motion to Disqualify Plaintiffs' Counsel Previously Filed with the U.S. Court of Appeals for the Second Circuit on February 16, 2016, ¶ 5, ECF No. 133. Accordingly, between 2007 and December 18, 2015, Locke Lord represented defendants on intellectual property matters, including trademark matters unrelated to this case. This means that, from January 12, 2015 until December 18, 2015, Lock Lorde simultaneously represented plaintiffs in this case and defendants on other matters.

On November 19, 2015, Hardin received an internal firm e-mail requesting references for a litigation funding consultant in this case. Tr. 5:10-15. Hardin noticed B&F's name, and, approximately one month later, on December 18, 2015, sent B&F a letter terminating his representation of them. His letter did not inform B&F that Locke Lord had simultaneously represented B&F and their adversary Victorinox. See Declaration of William Meyer dated February 12, 2016, in Support of Defendants' Motion to Disqualify Plaintiffs' Counsel Previously Filed with the U.S. Court of Appeals for the Second Circuit on February 16, 2016, Ex. 1, ECF No. 134.

■ Concurrent representation of parties on opposing sides of a litigation is a prima facie conflict of interest. See Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 133 (2d Cir.2005). To

survive a disqualification motion, an "attorney [who engages in concurrent representation] must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." Id. An attorney's conflicts are presumptively imputed to her firm. Id. When evaluating whether this presumption of shared confidences has been rebutted, "[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint." Id. at 137.

■ Although the Court ultimately concludes there is no disqualifying taint in this case, the Court is troubled by three aspects of the record. First, representing a party to a litigation who is suing a party that you also represent in other matters is, in the absence of informed consent, a violation of New York's ethical rules, and thereby the rules of this Court. See N.Y. R. Prof'l Conduct 1.7; S.D.N.Y. Local Rule 1.5(b)(5). See also ABA Model Rules of Prof'l Conduct r. 1.7.[2]

Second, this violation of ethical standards was the result of negligent—even grossly negligent—practices on Locke Lord's part. In particular, Raymond E. LaDriere II, Esq., who acts as Locke Lord's ethics guru, testified that, when the firm merged with Edwards Wildman, it only conducted conflict checks on clients who had billed more than $100,000 in one or both of the previous two years. Tr. 23:3-24:9, 36:16-38:1. Although this was initially a function of time restraints, even after the

---

trademarks as those dates came up in the docketing system (and then to act to maintain those marks ...)." Declaration of Rory J. Radding, Esq. dated June 20, 2016, Ex. 4 ¶ 4, ECF No. 137. He also alleges that, in 2015, Locke Lord only billed B&F $1,406.25 for work on the maintenance of a single trademark, registered in connection with leather coats. Id. ¶ 8.

2. Mr. Hardin, who is based in Locke Lord's Dallas Office, testified that suing one's own clients without their informed consent is not a violation of the ethical rules of Texas, provided that the lawsuit and representation of the defendant are not "substantially related." Tr. 13:12-21, 16:19-17:5; see Tex. Disciplinary R. of Prof'l Conduct 1.06(b)(1).

merger Locke Lord did not complete the conflict check, Tr. 23:9-17, 34:20-22, because the firm decided it was just not worth it to comply with its ethical obligations, and so has not performed a complete conflict check even to now.

Third, the letter sent by Mr. Hardin to his former client B&F is misleading on its face. As Mr. Hardin conceded in his testimony, the letter conveys only that Locke Lord is terminating its relationship with B&F for economic reasons. Tr. 12:20-24. However, as Mr. Hardin also admitted, Locke Lord terminated the relationship with B&F not just for economic reasons but also because of the apparent conflict; indeed, the conflict was the precipitating cause of the termination. Tr. 14:8-15. The letter, however, contains nothing that would alert B&F to any conflict. Tr. 11:16-23; Declaration of William Meyer dated February 12, 2016, in Support of Defendants' Motion to Disqualify. Plaintiffs' Counsel Previously Filed with the U.S. Court of Appeals for the Second Circuit on February 16, 2016, Ex. 1, ECF No. 134. Moreover, Mr. Hardin undertook only a single, limited consultation with Mr. La-Driere, the ethics partner, on this issue and did not consult him at all on the contents of the letter. Tr. 13:24-14:3, 29:4-21, 30:21-23.

Despite all this, Mr. Hardin credibly testified there was no exchange of pertinent information relating to this case between Mr. Hardin in Texas and the litigation team in New York, Tr. 9:16-19, and no one has adduced any evidence to the contrary, Tr. 33:22-34:12. Moreover, Locke Lord's representation of B&F was very substantially different from its representation of Victorinox, and there is no indication that the Victorinox litigation team even knew about the conflict. Although Hardin's conflict must be presumptively imputed to the firm overall, see Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 133 (2d Cir.2005), Hardin testified that he did not contact the New York litigation team and instead "created [his] own wall" separating himself from them. Tr. 9:16-19. Finally, Locke Lord's representation of B&F ceased in December 2015. At present, therefore, there does not appear to be any conflict, or even the appearance of a conflict.

Locke Lord also argues that Victorinox will be prejudiced if forced to secure replacement appellate counsel at this late stage. In addition, Victorinox has unequivocally expressed that it wishes to keep Locke Lord as counsel. See Declaration of Rory J. Radding, Esq. dated June 20, 2016, Ex. 8, ECF No. 137.

Because the concurrent representation ended in December 2015 and because there is no evidence that any material information passed between Hardin and the Victorinox litigation team, the Court concludes that there is no actual or apparent conflict disqualifying Locke Lord from its continued representation of Victorinox. Accordingly, defendants' motion to disqualify Locke Lord is hereby denied.

The Clerk of Court is directed to close document number 129 on the docket of this case.

SO ORDERED.